**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CLARENCE R. WILLIAMSON, III, AKA MARK HOWARD, B60163,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **vs.** | ) ) ) |
| **SCOTT THOMPSON, DANIEL MONTI, CASSANDRA DAVIS, LIEUTENANT BOYLE, OFFICER HUNT, OFFICER RHODES, OFFICER BARRY, AARON SPEAGLE, LESLIE LOCKWOOD, LANA NALAWAJKA,[1] OFFICER ROBINSON, JOHN/JANE DOE, OFFICER LISTER.** | ) ) **Case No. 22-cv-225-DWD** ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Clarence R. Williamson, III,[2] an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center (Centralia), brings this civil rights action for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff raises complaints about many aspects of his confinement including, medical care for chronic conditions, mental health care, the handling of COVID-19 at the facility,

---

[1] The Clerk of Court is be DIRECTED to correct the spelling from Nalawajka to Nalewajka because it appears that it was a typographical error when this case was opened. Plaintiff repeatedly refers to the defendant as "Nalewajka."
[2] Also known as Mark Howard.

retaliation, harassment from staff, false disciplinary proceedings, his right to practice his religion and the handling of his grievances, among other things.  He seeks declaratory, monetary and injunctive relief.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's complaint contains numerous allegations about his day-to-day life from May 31, 2020, through February of 2022.  (Doc. 1).  Plaintiff alleges that in April 2020, an administrative quarantine was imposed on the facility in response to the pandemic, which limited inmates to one hour out of the cell in the morning and evening, and access to showers, phones, and dayroom during intervals.  (Doc. 1 at 11).  Prior to the quarantine, inmates had freedom to move about the area for showers, dayroom, phones, and time outside of their cell from approximately 8a.m. to 9:30p.m. each day.  Plaintiff alleges that in April 2020 he spoke to Defendants Thompson and Monti about concerns communicating with his family who was addressing deaths and serious medical issues.

On April 15, 2020, Plaintiff raised concerns with Thompson and Monti that the quarantine measures were being imposed arbitrarily by staff. (*Id.* at 11-12).

Plaintiff alleges that on May 31, 2020, he questioned Defendant Lister about access to various amenities like dayroom and phone time. (Doc. 1 at 12). The interaction was not favorable, and Plaintiff asked Lister for a grievance. Lister shouted at Plaintiff when he delivered the grievance, and he allegedly filed false disciplinary charges against Plaintiff, which Plaintiff viewed as retaliation. Plaintiff informed Defendants Thompson and Monti about the alleged retaliation. In response to the retaliation, Plaintiff sought a grade reduction and permission to make funeral arrangements, which Thompson and Monti denied.

On October 13, 2020, the quarantine restrictions intensified. For three days inmates were confined to cells for 24 hours, and then inmates were confined for 23 hours and 45 minutes a day until November 9, 2020. (Doc. 1 at 13). Plaintiff alleges that Thompson, Monti, and Defendant Nalewajka colluded to impose this 'bogus medical quarantine.' During the quarantine, Plaintiff claims that Thompson and Monti ended video visits, and terminated laundry services because the dryers were not hot enough to kill COVID-19. Plaintiff complained to Thompson and Monti about the access to hot showers and laundry. He also complained that his medical issues were not being properly treated.

On October 24, 2020, Plaintiff informed a nurse about his family history of heart disease, and his own concerns about his HDL numbers without the ability to do cardio

exercise.  (Doc. 1 at 14).  Defendant Nalewajka was informed about these issues, but he did nothing.

In November of 2020, Plaintiff sought accommodations for a family member's death from Defendant Lockwood, but Lockwood ignored his requests and falsified documents about it.  Thompson was notified of the problems and did not allow Plaintiff to use a telephone, nor did he offer grief counseling.  (*Id.* at 14-15).

On December 6, 2020, Defendant Rhodes denied Plaintiff access to his scheduled dayroom time.  Rhodes also tried to provoke Plaintiff.  (Doc. 1 at 15).

On December 15, 2020, Plaintiff informed Thompson and Monti that the quarantine was impacting his religious beliefs because of their governing policies.  (Doc. 1 at 15).

From December of 2020 to February of 2021, Plaintiff details a number of incidents where staff (not named as defendants) deviated from mask wearing, and from following other routine practices.  (Doc. 15-17).  Plaintiff alleges that in February of 2021, he attempted to inform Defendant Boyle of the issues with various protocols and practices. He noticed Boyle speak to Hunt after he informed Boyle of his complaints, and then Boyle scowled in his direction.  He alleges that "thereafter confrontation occurred with Hunt's minions; posing threats on individuals incarcerated lives.  Hunt's informants would rally for witnesses to provoke Plaintiff to respond with violence."  (Doc. 1 at 17).  Plaintiff characterized Hunt's behavior as retaliation.

Plaintiff claims that on February 15, 2021, he filed a grievance about the issues he raised to Boyle, but Defendant Thompson never responded.  (Doc. 1 at 17).  In February

and March of 2021, Plaintiff inquired with Justin Cox and Officer Strubhart (non-parties) about the missing grievances to no avail.  (*Id.* at 18).  He also contacted the Administrative Review Board (ARB) but got no response.  He also asked Defendant Monti about the issue in March or April of 2021, but Monti refused to help and later left employment at Centralia.

In April of 2021, Plaintiff confronted Defendant Speagle about not wearing a face mask.  Plaintiff repeated these concerns to multiple staff members in April and May of 2021. (Doc. 1 at 19-20).

In May of 2021, Plaintiff asked non-parties Foltz and Tucker to address an emergency or crisis he was having.  Plaintiff was directed to Defendant Boyle, who allegedly 'screened' the crisis in front of other inmates in a humiliating fashion.

In August of 2021, Plaintiff sent Thompson a grievance about staff not wearing masks, but he got no response.  (Doc. 1 at 20).  In August 2021, Plaintiff also sent documentation to 'Warden' Davis about his need for mental and medical health treatment, especially his need for cardio to manage his HDL.  Davis allegedly refused him access to the yard.  Plaintiff alleges that he made Defendants Thompson, Monti, Nalewajka and Davis aware of his health issues.

In October of 2021, Plaintiff confronted staff for not wearing masks.  One of these confrontations with Defendant Barry escalated.  On October 6, 2021, Plaintiff alleges that Barry denied him access to mental health, and he engaged in a volley of verbal assaults towards Plaintiff.   Among the words exchanged, Barry allegedly made sexually suggestive taunts and declarations.  (Doc. 1 at 22).  Plaintiff alleges that either during this

exchange or some time in October of 2021 Barry told other inmates that he had raped Plaintiff.  (Doc. 1 at 23).  Plaintiff attempted to report this conduct both directly and via his family members because he felt endangered.  Warden Davis apparently took steps in response to contact from Plaintiff's family, but he alleges that a threat still existed.  During November and December of 2021, Plaintiff alleges that associates of Barry took various actions against him such as denying cleaning supplies, meals, and other petty harassment.

On November 10, 2021, Plaintiff alleges that Defendant Speagle fabricated a false disciplinary charge against him, which was later determined unfounded.  (Doc. 1 at 23).  Despite the charge being overturned, Plaintiff is concerned that its very existence could impact his supplemental sentence credits.

On February 1, 2022, Plaintiff alleges that he got into a verbal altercation with Defendant Robinson.  Plaintiff asked for a crisis team member, and Robinson eventually contacted someone.  (Doc. 1 at 24).  Defendant Boyle responded to the call for a crisis team.  Robinson continued to make threats and derogatory remarks to Plaintiff in Boyle's presence.

Plaintiff alleges that all of the conduct he described was part of a common venture or conspiracy, even if the conspirators were ignorant to the identity of other conspirators.  He alleges that everyone understood a general objective to deprive and punish him.  (Doc. 1 at 25).  Plaintiff alleges that he has been targeted as a result of his speech about COVID-19 quarantine measures, and his belief that measures were fraudulent.  As a result, he claims he has suffered physical impairments because he has been isolated to his

cell in the name of 'covid measures.' (Doc. 1 at 25). In total, he claims that his "Right to Free Speech, Equal Protection of the laws, right to redress grievances and be free from retaliation, free from retaliation after exercising these rights, basic medical needs to be provided and grounded in the inherent right to practice my religion, opposed to being prodded and provoked to lose faith; according to the state and federal laws and under the First, Eighth, and Fourteenth Amendments to the United States Constitution." (Doc. 1 at 26). Plaintiff seeks declaratory and injunctive relief and monetary compensation. (Doc. 1 at 27).

<u>**Preliminary Dismissals**</u>

Plaintiff claims that the allegations in his complaint show a wide-ranging conspiracy by all defendants. To plead a § 1983 conspiracy, a complaint must identify: (1) the parties to the conspiracy, (2) the general purpose of the conspiracy, and (3) the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). "[T]he plaintiff must meet a high standard of plausibility" when alleging a "vast, and encompassing conspiracy." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). "[M]ere suspicion that persons adverse to the plaintiff had joined in a conspiracy against him or her [is] not enough." *Id.* Plaintiff's allegations of a conspiracy are insufficient. This is particularly true because he claims that all of the defendants may not have even known of the conspiracy or the participants to the conspiracy. Plaintiff may hypothesize that there is a conspiracy, but he has not plausibly established a conspiracy. Accordingly, this allegation is dismissed, and the other allegations in the complaint are viewed independently.

Plaintiff's complaint also contained allegations concerning conduct by a number of individuals who were not named as defendants in the complaint.  For example, Plaintiff alleged that on October 20, 2020, Officer Hill and Major Hammonds denied him a phone call or shower.  Federal Rule of Civil Procedure 10(a) requires the title of the complaint to list all parties.  *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Claims against any individuals that were not properly named in the caption were not considered.

The Court also notes that Plaintiff's complaint contained many allegations concerning mask-wearing by various prison staff.  Regardless of the wisdom or necessity of mask-wearing, the Court does not find that the instances identified by Plaintiff rose to the level of a constitutional violation, because he does not allege that he or anyone else suffered physical harm as a result of the incidents.  Without allegations of particular harm or injury, the Court finds that at this juncture these issues do not rise to the level of a constitutional violation.  *See e.g., Bodnar v. Lake County Jail*, 2020 WL 1940742 at *3-4 (N.D. Ind. 2020) (finding that a variety of complaints about quarantines, mask use and COVID testing did not rise to the level of a constitutional violation because the steps were rationally related to a legitimate non-punitive purpose, and noting that absent physical injury no compensatory damages could be awarded).

Plaintiff's complaint also includes multiple allegations that from time-to-time individual defendants prevented him from having access to the dayroom.  One-off instances of limited recreation or dayroom time are not sufficient to state an Eighth Amendment claim, so the Court did not divide any such allegations into individual

claims below.  *See Brand v. Oglesby*, 2021 WL 4324801 *2 (S.D. Ill. 2021) ("There is no bright-line constitutional rule requiring a set amount of time for inmates to have dayroom access, contrary to Plaintiff's belief.  That said, cutting short dayroom time on one occasion does not rise to the level of a protected liberty interest.").

Plaintiff complained about the handling of various grievances, but an inmate does not have an inherent right to a fully-functional grievance procedure, or any grievance procedure at all, so these allegations do not amount to a claim.  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted); *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992) (the constitution requires no procedure at all, so a failure of state prison officials to follow their own procedure does not, standing alone, violate the constitution).

As for legal theories he specifically identifies, Plaintiff allege that his right to Equal Protection was violated, but he did not make any factual allegations consistent with this legal theory.  Accordingly, no claim will proceed for a violation of Plaintiff's right to Equal Protection.

## Analysis

Given the broad and rambling nature of Plaintiff's Complaint, it was difficult to discern distinct and logically organized claims.  Giving broad deference to Plaintiff as a pro se litigant, the court designates the following Claims, based on the Complaint:

Claim 1:    **Eighth Amendment conditions of confinement claim against Defendants Thompson and Monti for the restrictions associated with quarantine;**

Claim 2:    **First Amendment retaliation claim against Defendant Lister for issuing a false disciplinary report;**

Claim 3:     Eighth Amendment cruel and unusual punishment claim against Defendants Thompson, Monti, and Lockwood for their handling of Plaintiff's requests to communicate with family about their health, or his requests to help with a funeral;

Claim 4:     Eighth Amendment deliberate indifference to serious medical needs against Defendants Nalewajka, Davis, Thompson, and Monti for their treatment of Plaintiff's chronic conditions;

Claim 5:     First Amendment restriction on exercise of religion by Thompson and Monti;

Claim 6:     First Amendment retaliation against Defendants Boyle and Hunt for their refusal to acknowledge or address Plaintiff's concerns regarding face masks;

Claim 7:     Eighth Amendment deliberate indifference against Boyle for his screening of Plaintiff's crisis;

Claim 8:     Eighth Amendment cruel and unusual punishment against Defendant Barry for his harassment and threats towards Plaintiff and against Davis for the handling of the situation;

Claim 9:     First Amendment retaliation claim against Defendant Speagle for false discipline;

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

*Standard of Review*

To survive preliminary review under Section 1915A, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Typically, to state a valid claim under § 1983, the allegations must be made against individuals, and when a plaintiff states that a group of individuals harmed him without providing more, such an allegation is insufficient to state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (a complaint must show more than a "sheer possibility that a defendant has acted unlawfully.") To plead a § 1983 claim, a plaintiff must allege that a defendant was personally involved in the deprivation of a constitutional right. Matz v. Klotka, 769 F.3d 517, 528 (7th Cir. 2014).

*Claims*

**Claim 1:      Eighth Amendment conditions of confinement claim against Defendants Thompson and Monti for the restrictions associated with quarantine;**

Plaintiff alleges that in April of 2020 the defendants implemented an Administrative Quarantine schedule due to the global COVID-19 pandemic. As a result, there were restrictions on time of out of the cell, access to showers, phones, and the dayroom. Plaintiff alleges that he complained to Defendants Thompson and Monti that the quarantine restrictions were arbitrarily implemented by staff. He alleges that the non-response by these defendants indicated a desire for Plaintiff to suffer. To plead an Eighth Amendment conditions of confinement claim, a plaintiff must plead that "the conditions at issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities'" and that the prison official

acted deliberately indifferent to the conditions in question.  *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).

Although restrictive conditions of confinement can be the basis for an Eighth Amendment claim, Plaintiff's initial allegations are overly generic.  Later in his complaint he alleges that from October 13, 2020, to November 9, 2020, Thompson and Monti implemented a more stringent quarantine that had three days of total solitary confinement in cells, followed by a few weeks of 23 hours and 45 minutes per day in a cell with brief releases for showers and phone calls.  During this time access to laundry, and to hot showers was also apparently limited.  Plaintiff said he raised concerns about these conditions with Thompson and Monti.  (Doc. 1 at 13).  At this early stage, this claim is sufficient to proceed against Thompson and Monti.

**Claim 2:**     **First Amendment retaliation by Defendant Lister for a false disciplinary charge**

Plaintiff alleges that Defendant Lister got frustrated with him on May 31, 2020, because Plaintiff asked Lister about compliance with certain scheduled activities like dayroom and phone access.  Lister retaliated by fabricating disciplinary charges against Plaintiff.  An act taken in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.  *Gomez v. Randle*, 680 F.3d 859, 866-67 (7th Cir. 2012).

**Claim 3:**     **Eighth Amendment cruel and unusual punishment claim against Defendants Thompson, Monti, and Lockwood for their handling of Plaintiff's requests to communicate with**

> family about their health, or his requests to help with a
> funeral;

Plaintiff raises multiple allegations about his ability to communicate with his family concerning medical issues, and later, funeral arrangements.  Federal law does not entitle inmates to compassionate leave or even to have contact with their families in prison, so Plaintiff's allegations do not rise to the level of a constitutional violation.  *See Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994).  Therefore, the Court will dismiss this claim.

> **Claim 4:**  **Eighth Amendment deliberate indifference to serious medical needs against Defendants Nalewajka, Davis, Thompson and Monti for their treatment of Plaintiff's chronic conditions;**

Plaintiff claims that he has a family history of heart disease, and he personally has been prescribed cardiovascular exercise to manage his HDL numbers.  He alleges that during the various quarantines he has been unable to get medical treatment or to maintain his prescribed exercise regimen.  Although the Court is skeptical that these allegations amount to deliberate indifference to a serious medical need, the claims will be allowed to proceed at this juncture because Plaintiff alleges he was unable to get needed care for a prolonged period (possibly from April 2020 to date).  The claim will be allowed to proceed both against Nalewajka as a medical provider, and against the three other named supervisory defendants because Plaintiff alleges that he personally made him aware of his medical issues.

**Claim 5:**     **First Amendment restriction on exercise of religion by Thompson and Monti;**

As a more discrete consequence of the quarantine, Plaintiff alleges that he informed Defendants Thompson and Monti that he was unable to practice his religion because of restrictions.  Specifically, he writes, "on or about 12/15/20, Plaintiff expressed to Thompson & Monti the restrictions imposed while on 'medical quarantine' practicing his religious beliefs, because of their govern polices." (Doc. 1 at 15).   To establish a First Amendment claim concerning religious practice, a plaintiff must allege that the defendants personally and unjustifiably placed a substantial burden on his religious practices.  *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016).  Here, although Plaintiff may have experienced limitations on his normal religious practice, he has not clearly identified his religion or the nature of the restrictions, so the claim is insufficient.  Additionally, it is difficult to imagine that restrictions related to containing the virus were unjustified.  The Court will dismiss this claim as insufficiently pled.

**Claim 6:**     **First Amendment retaliation against Defendants Boyle and Hunt for their response to his request that staff wear face masks;**

Throughout the Complaint, Plaintiff raises many contentions that staff at Centralia did not wear face masks.  On multiple occasions he confronted staff and supervisors about these issues.  As explained in the preliminary dismissal section, the Court finds that Plaintiff did not state any claim for the actual failure of staff to wear masks.  However, in a more discrete fashion, Plaintiff alleges that he addressed Defendant Boyle with concerns about face mask usage and he saw Boyle talk with Defendant Hunt right

after he confronted Boyle.  (Doc. 1 at 17).  Plaintiff alleges he observed a scowl on Hunt's face, and Hunt subsequently organized others to harass or provoke Plaintiff.  He suggests that in this fashion Boyle and Hunt retaliated against him for complaining about the use of masks.  To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation.  *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Here, the Court will assume that Plaintiff's speech was protected.  Plaintiff alleges that he was harassed as a result of his speech or that Hunt tried to enlist others to provoke him.  These experiences were likely unpleasant, but they do not equate to an actual deprivation of a privilege or amenity.  Nor do the allegations show a deprivation sufficient to chill Plaintiff's speech.  To the contrary he continued to raise face mask issues and he grieved these interactions to Thompson, and verbally raised them to Monti.  These further allegations suggest that the conduct did not rise to the level of First Amendment retaliation, so Claim 6 will be dismissed without prejudice.

**Claim 7:     Eighth Amendment deliberate indifference against Boyle
for his screening of Plaintiff's crisis;**

Plaintiff alleges that on one occasion when he sought a crisis team, he was directed to Defendant Boyle and Boyle embarrassed him by screening his crisis in a public space in front of other inmates.  This claim straddles the line between deliberate indifference and harassment.  The Seventh Circuit has indicated that although verbal harassment alone generally does not give rise to a claim under the Eighth Amendment, verbal

harassment about a known psychological vulnerability may amount to cruel and unusual punishment.  *See* *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019).  Accordingly, Claim 7 will proceed against Defendant Boyle.

**Claim 8:** **Eighth Amendment cruel and unusual punishment against Defendant Barry for his harassment and threats towards Plaintiff and against Davis for the handling of the situation;**

Plaintiff alleges that Barry made sexual remarks towards him, and that Barry also told other inmates he raped him.  As a result, Plaintiff claims he feared for his safety.  A guard's comments that might increase the likelihood of assault by other individuals may be sufficient to state a claim under the Eighth Amendment for cruel and unusual punishment.  *See* *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015).  Thus, Claim 8 will proceed against Defendant Barry for his alleged harassment of Plaintiff.

By contrast, Plaintiff alleges that Defendant Davis took some responsive measures, but he believes what Davis did was not enough.  At this juncture this claim is insufficient because it does not provide any level of detail about Davis' actions.  For example, Plaintiff did not allege that the measures Davis took amounted to a failure to protect because there was a subsequent incident of harassment.  Plaintiff's allegations concerning Davis are insufficient to demonstrate his personal role in a failure to protect, supervise, or any other sort of Eighth Amendment claim.  Accordingly, Claim 8 will be dismissed without prejudice as to Defendant Davis.

**Claim 9:** **First Amendment retaliation claim against Defendant Speagle for false discipline;**

Plaintiff alleges that Defendant Speagle issued a false disciplinary report, but he notes that the discipline was overturned as unfounded.  As with the claim against Defendant Lister for false discipline, Claim 9 will be allowed to proceed.

### Severance

Claims 2 and 9 alleging retaliation in the form of false discipline by Defendants Lister and Speagle are not related to the majority of this lawsuit.  Additionally, Claim 7 against Defendant Boyle concerning his handling of a crisis, and Claim 8 against Defendant Barry for harassment are not related to the main factual and legal allegations in this lawsuit.  Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Claims 2 and 9 into a single case, and Claims 7 and 8  into separate cases, and will open new cases with newly-assigned case numbers.

### Remaining Counts

At this stage, Plaintiff states claims concerning the conditions of confinement (Claim 1) during quarantines against Defendants Thompson and Monti, and about his medical care during the same time period (Claim 4) against Defendants Thompson, Monti, Davis and Nalewajka that may proceed in this lawsuit.

### Pending Motions

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) will be granted in this case.  Although Plaintiff was not granted leave to proceed *in forma pauperis* in this case, the Court assumes that as an inmate he has limited financial means and would qualify for service of process.

Plaintiff's Motion for Protection or Testimony (Doc. 7) contains various factual allegations about recent events. The motion does not seek any explicit relief, other than a request that the Court elaborate on the severity of the claims. The motion also mentions the standard 60-day timeframe within which the Court endeavors to screen complaints. The Court will interpret the Motion as one for Status, and it will be **DENIED** as **MOOT** in light of the issuance of this order of initial review.

### Disposition

For the reasons stated above, Claims 2 and 9 against Defendants Lister and Speagle are severed into one lawsuit, Claim 7 against Defendant Boyle is severed into a second lawsuit, and Claim 8 against Defendant Barry is severed into a third lawsuit. In each new case, the Clerk is **DIRECTED** to file the following documents:

•   This Memorandum and Order;

•   The Complaint (Doc 1);

•   The Motion for Service of Process at Government Expense (Doc. 4)

The only claims remaining in this case are **Claim 1** against Defendants Thompson and Monti, and **Claim 4** against Defendants Thompson, Monti, Davis, and Nalewajka. Any potential claims against Hunt, Rhodes, Lockwood, Robinson, and John/Jane Doe are **DISMISSED** without prejudice.  **Claims 3, 5, 6 and 9** are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Defendants Thompson, Monti, Davis, and Nalewajka: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants'

place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis is granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) will be **GRANTED** as it pertains to this case. Although Plaintiff did not apply to proceed *in forma pauperis* and instead opted to pay the filing fee, the Court will assume that as an inmate he is indigent and eligible for service of process assistance.

Plaintiff's Motion for Protection and Testimony (Doc. 7) is **DENIED** as **MOOT**.

The Clerk of Court is **DIRECTED** to correct the spelling of Nalawajka to Nalewajka.


**IT IS SO ORDERED.**

Dated: 05/02/2022

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge


Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers,

but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.